UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **RICHARD BRAGG,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 5:16-cv-00030-MHH |
| } | |
| **E. CASEY WARDYNSKI and THE** } | |
| **HUNTSVILLE CITY BOARD OF** } | |
| **EDUCATION,** } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION AND ORDER

In this employment discrimination action, plaintiff Richard Bragg contends that the Huntsville City Board of Education discriminated against him because of his age. Mr. Bragg asserts an Age Discrimination in Employment Act or ADEA claim against the Board.[1]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Board asks the Court to dismiss Mr. Bragg's ADEA claim. (Doc. 22). Having considered the parties' written submissions (Docs. 22, 28) and with the benefit of oral argument, the Court

---

[1] The Court previously dismissed Mr. Bragg's 42 U.S.C. § 1983 claim against Dr. Casey Wardynski. (Doc. 30).

finds that Mr. Bragg's amended complaint states a claim for age discrimination. Therefore, the Court denies the Board's motion to dismiss.[2]

## I. STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, *1 (M.D. Ala. March 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most

---

[2] On November 2, 2016, the Court held a hearing on the Board's motion. A court reporter was present, and a transcript is available upon request.

favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015).

## II. FACTUAL BACKGROUND

Mr. Bragg worked for the Board as a physical education teacher's aide from 1996 until January 2015. (Doc. 21, ¶¶ 4, 10). Mr. Bragg alleges that his work environment changed after he turned 60 years old in January 2014. (Doc. 21, ¶ 12). Between January 2014 and August 2014, Mr. Bragg received three written reprimands based on student complaints that "mischaracterize[d] [Mr. Bragg's] conduct as various forms of child abuse" or "sexualized conduct." (Doc. 21, ¶ 12).[3] According to Mr. Bragg, then superintendent of Huntsville City Schools, Dr. Casey Wardynski, instructed Mr. Bragg's supervisor to solicit the student complaints that formed the basis of the reprimands. (Doc. 21, ¶ 13).

Mr. Bragg contends that in early February 2014, his supervisor gathered "a series of complaints from students concerning inappropriate touching of students." (Doc. 21, ¶ 13). After issuing a written reprimand to Mr. Bragg and investigating the allegations, Mr. Bragg's supervisor wrote a letter to Dr. Wardynski explaining that she found no basis for the allegations. (Doc. 21, ¶ 13). After he received the supervisor's report, Dr. Wardynski continued to "target" Mr. Bragg. (Doc. 21, ¶ 13).

---

[3] Mr. Bragg's amended complaint states that he received reprimands through August 2015. (Doc. 21, ¶ 12). Because Mr. Bragg states that he was employed by the Board until January 2015 (Doc. 21, ¶ 4), the Court assumes that the reference to August 2015 in paragraph 12 of the amended complaint is a typographical error.

In April 2014, Mr. Bragg's supervisor issued another reprimand alleging that Mr. Bragg inappropriately touched a student. (Doc. 21, ¶ 14). In response, Mr. Bragg informed his supervisor that he used restraint training that he received from the Board to stop a fight between two students. (Doc. 21, ¶ 14). The supervisor accused Mr. Bragg of lying about his encounter with the student. (Doc. 21, ¶ 14).

In August 2014, Mr. Bragg received another written reprimand. This report accused Mr. Bragg of intentionally injuring a child by picking the child up by her neck and "rub[ing] [his] groin area on [the student's] back." (Doc. 21, ¶ 15). Mr. Bragg told his supervisor that he wrapped his arms around the child to hug her but did not lift her up by her neck. (Doc. 21, ¶ 15). In response to additional questioning from his supervisor and another Board employee, Mr. Bragg explained that "none of his actions were memorable" and "he wasn't sure" of the details. (Doc. 21, ¶ 15). Mr. Bragg contends that his supervisor encouraged one of his (Mr. Bragg's) co-workers to substantiate the allegations against him by providing false information about the incident. (Doc. 21, ¶ 15).

In September 2014, Dr. Wardynski recommended that the Board terminate Mr. Bragg's employment with the school system. (Doc. 21, ¶ 16). Mr. Bragg received a letter from the Board that advised him of the superintendent's recommendation. The letter explained the nature of the allegations which formed the basis of the written reprimands. (Doc. 21, ¶ 17). With respect to the August 2014 incident, the letter informed Mr. Bragg that video evidence showed that he lifted the student by her neck.

4

(Doc. 21, ¶ 17). The letter explained that Mr. Bragg could challenge Dr. Wardynski's termination recommendation by requesting a hearing and stated that if Mr. Bragg did not request a hearing, then the Board would approve the termination. (Doc. 21, ¶ 16). Mr. Bragg requested a hearing. (Doc. 21, ¶ 18).

Also in September 2014, Dr. Wardynski removed Mr. Bragg from the school in which he worked and prohibited him from coaching. (Doc. 21, ¶ 19). Dr. Wardynski reassigned Mr. Bragg to a manual labor position in the school district's warehouse. (Doc. 21, ¶ 19). On September 26, 2014, after Dr. Wardynski reassigned Mr. Bragg but before Mr. Bragg's hearing, Dr. Wardynski spoke to a television news station about the allegations against Mr. Bragg. (Doc. 21, ¶ 21).

In October 2014, the Board reported to the Madison County Department of Human Resources the incidents that formed the basis of the reprimands against Mr. Bragg. (Doc. 21, ¶ 22). According to Mr. Bragg, Dr. Wardynski provided to DHR an altered copy of the video of the April 2014 incident and false witness statements and reprimands. (Doc. 21, ¶ 22).

Just before Mr. Bragg's hearing, Dr. Wardynski produced a copy of the video of the April 2014 incident. (Doc. 21, ¶ 24). Mr. Bragg contends that someone altered the video by "pixelating the images." (Doc. 21, ¶ 24). According to Mr. Bragg, the video reveals that he did not pick up a student by her neck. (Doc. 21, ¶ 27). Also on the eve of his hearing before the Board, another Board employee, at Dr. Wardynski's instruction, offered Mr. Bragg an opportunity to resign instead of participating in a

hearing. (Doc. 21, ¶ 25). Mr. Bragg resigned his position instead of participating in a due process hearing before the Board. (Doc. 21, ¶ 26).

After Mr. Bragg resigned, he contends that the Board replaced him with "a substantially younger employee." (Doc. 21, ¶ 23). In addition, Mr. Bragg alleges that he faced termination but younger employees who engaged in the same or similar conduct suffered less serious consequences or no consequences at all. (Doc. 21, ¶ 28).

## III. DISCUSSION

To state a claim for discrimination under the ADEA, a plaintiff must allege that: "(1) he was a member of the protected [age] group []; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged." *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). The Board argues that the Court should dismiss Mr. Bragg's ADEA claim because Mr. Bragg has failed to allege that he suffered an adverse employment action.[4] Specifically, the Board contends that Mr. Bragg's ADEA claim fails to state a claim because Mr. Bragg resigned his employment after receiving notice that he had a right to a hearing. The Court disagrees.

"An involuntary resignation that constitutes a constructive discharge is an adverse employment act." *Ross v. City of Perry, Ga.*, 396 Fed. Appx. 668, 670 (11th Cir. 2010). And, "[a]n employee's resignation will be deemed involuntary where the

---

[4] The Board does not challenge the sufficiency of Mr. Bragg's allegations with respect to the other elements of his age discrimination claim. (*See generally* Doc. 22).

employer (1) forces the resignation by coercion or duress, or (2) obtains the resignation by deceiving or misrepresenting a material fact to the employee. *Id.* (citing *Hargray v. City of Hallandale,* 57 F.3d 1560, 1568 (11th Cir. 1995)).

At the motion to dismiss stage, Mr. Bragg has alleged sufficiently that his resignation was involuntary. Mr. Bragg maintains that Dr. Wardynski asked his (Mr. Bragg's) supervisor to solicit complaints against him. (Doc. 21, ¶ 13). According to Mr. Bragg, after the supervisor advised Dr. Wardynski that there was no basis for the complaints, Dr. Wardynski continued to "target" him. (Doc. 21, ¶ 13). Mr. Bragg's supervisor encouraged one of Mr. Bragg's co-workers to substantiate certain allegations against him by providing false information. (Doc. 21, ¶ 16).

After Mr. Bragg requested a hearing before the Board to challenge Dr. Wardynski's recommendation that the Board terminate Mr. Bragg's employment, Dr. Wardynski spoke to a television news station about the complaints against Mr. Bragg. (Doc. 21, ¶ 21). Dr. Wardynski provided to DHR a purportedly altered copy of a video of one of the incidents that formed the basis of the complaints against Mr. Bragg. (Doc. 21, ¶ 22). Dr. Wardynski also provided to DHR false witness statements and reprimands concerning the complaints. (Doc. 21, ¶ 22). On the eve of Mr. Bragg's hearing before the Board, Dr. Wardynski produced a copy of the altered video. (Doc. 21, ¶ 24). Simultaneously, another Board employee, at Dr. Wardynski's direction, offered Mr. Bragg a chance to resign instead of participating in a hearing before the Board. (Doc. 21, ¶ 25).

7

These alleged facts, viewed in the light most favorable to Mr. Bragg, plausibly suggest that the Board forced Mr. Bragg to resign by coercion or duress. Accordingly, the Court finds that Mr. Bragg has pleaded sufficiently that the Board subjected him to an adverse employment action.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** the Board's motion to dismiss. **On or before March 31, 2017**, the parties shall please confer and file a notice containing proposed amended scheduling deadlines.

**DONE** and **ORDERED** this March 22, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE